UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MICHAEL E. BEYCHOK, *et al*.,     )
     )
     Plaintiffs,     )     Civil Action No. 3:24-CV-100-CHB
     )
v.     )
     )     **MEMORANDUM OPINION AND**
ROBERT A. BAFFERT, *et al.*,     )     **ORDER**
     )
     Defendants.     )

\*\*\*　　\*\*\*　　\*\*\*　　\*\*\*

Racehorse Medina Spirit finished first in the 2021 Kentucky Derby, but his reign as champion was short lived. Several months later, the Kentucky Horse Racing Commission ("KHRC") stewards disqualified Medina Spirit due to a failed post-race drug test. The disqualification meant the stewards announced a new order of finish wherein racehorse Mandaloun, who originally finished second, now placed first. Plaintiffs placed bets on Mandaloun which lost based on the stewards' race-day official finish. They argue that they would have won their wagers but for the "drug-induced win by Medina Sprit." *See, e.g.*, [R. 20, ¶ 7]. The Court must consider whether Plaintiffs' allegations are sufficient to state a claim under federal and Kentucky law.

The plaintiffs—Michael E. Beychok, Justin Wunderler, Keith Mauer, Jeffrey Kaufman, Todd Scoville, Brian Daury,[1] Matthew Wiley, James Davis Jr., Randall Jason King, Theresa Martin, Andy McVay, Roger Thomas, Jeffrey Andrews, Jason Eck, Carlo Capogreco, Steven Laibstain, Randall Robert Thompson, Jeffrey Seals, Dean Hokanson, III, Scot Fennell, Eric

---

[1] The briefings by both parties referred to this defendant as Brian Drury. *See* [R. 90, p. 1]; [R. 91, p. 1]; [R. 92, p. 1]. However, the official spelling in the case caption and the Amended Complaint, [R. 20], is Brian Daury. As such, the Court will use the latter spelling for Mr. Daury.

Wisher, William Wendoloski,[2] Matthew Schwartz, Andrew Greenberg, Kevin Reed, Robert Fields, Tom Van Houtte, Daniel Smith, Gary Davis, and Charles Cochran—brought suit under federal and state law against Defendants Robert A. Baffert ("Baffert"), Medina Spirit's trainer, and Bob Baffert Racing Stables, Inc. ("Baffert Racing"). Defendants filed a Motion to Dismiss all of Plaintiffs' claims. [R. 90]. Plaintiffs responded, [R. 91], and Defendants replied, [R. 92]. For the following reasons, the Court will deny Defendants' Motion to Dismiss in part, as it relates to Article III standing. Otherwise, the Court will grant Defendants' Motion to Dismiss because Plaintiffs' allegations are foreclosed under Kentucky law and, in any event, are too speculative.

## I.    BACKGROUND

On the first Saturday of every May, Churchill Downs hosts the Kentucky Derby. Betting on the Kentucky Derby is done through pari-mutuel betting, [R. 20, ¶ 73], which differs from other forms of betting in that bettors bet against other bettors to win a share of the total pool wagered. *Id.* According to the plaintiffs, the system operates such that

> [a]ll bets of a particular type are placed together in a pool and payoff odds are calculated by sharing the pool among all winning bets after taxes and the "house-take" are removed. The payoff is determined by the pool size minus the "take," and then divided by the number of winning tickets.

*Id.* After the stewards declare the race "official," bettors are paid their respective share of the pool. *Id.*; 810 Ky. Admin. Regs. 6:030 § 10(2) ("Payment of valid pari-mutuel tickets shall be made on the basis of the order of finish as declared "official" by the stewards or judges.").

The plaintiffs placed bets in the 147th Kentucky Derby ("the 2021 Derby"), which took place on May 1, 2021, at Churchill Downs in Louisville, Kentucky. [R. 20, ¶¶ 5–6]. Medina Spirit crossed the finish line first. *Id.* ¶ 83. The KHRC stewards determined the "official" order of finish

---

[2] The briefings by both parties referred to this defendant as Williams Wendoloski. *See* [R. 90, p. 1]; [R. 91, p. 1]; [R. 92, p. 1]. However, the official spelling in the case caption and the Amended Complaint, [R. 20], is William Wendoloski. As such, the Court will use the latter spelling for Mr. Wendoloski.

for pari-mutuel wagering for the top horses as follows: (1) Medina Spirit, (2) Mandaloun, (3) Hot Rod Charlie, (4) Essentially Quality, (5) O Besos, and (6) Midnight Bourbon. *See Mattera v. Baffert* (*Mattera II*), 100 F.4th 734, 738 (6th Cir. 2024). Later, Medina Spirit underwent post-race drug testing, which revealed the presence of betamethasone, a Class C drug that, while permissible therapeutically, must be discontinued fourteen days prior to racing and must be undetectable on race day. [R. 20, ¶¶ 84, 86].[3] Over nine months later, on February 21, 2022, Medina Spirit was disqualified from the race, and Baffert, the horse's trainer, was suspended and fined. *See* Amr. F. Zedan, Stewards Ruling No. 22-0010 (Ky. Horse Racing Comm'n Feb. 21, 2022) [hereinafter Stewards Ruling 22-0010];[4] Robert A Baffert, Stewards Ruling No. 22-0009 (Ky. Horse Racing Comm'n Feb. 21, 2022) [hereinafter Stewards Ruling 22-0009].[5]

As a result of the disqualification, the stewards issued a new order of finish: (1) Mandaloun, (2) Hot Rod Charlie, (3) Essentially Quality, (4) O Besos, and (5) Midnight Bourbon. Stewards Ruling 22-0010. Upon recognizing Mandaloun as the new first place finisher, the KHRC ordered that the prize money ("the purse")—which had not yet been distributed—be given to Mandaloun's owner and other subsequent finishers pursuant to the new order. *See* Stewards Ruling 22-0010. Payouts to bettors, however, were not altered. *Id.*; [R. 20, ¶ 84]. The Stewards' Ruling explicitly provided, "[p]ari-mutuel wagering is not affected by this ruling." Stewards Ruling 22-0090. This is according to Kentucky regulations on horse race betting. *See* 810 Ky. Admin. Regs. 4.040 § 17 (stating, in the context of the race-day decision, "[t]he decision of the stewards as to the official

---

[3] According to the Sixth Circuit, "[b]etamethasone is a corticosteroid used to treat inflammation in horses. It can act as a performance-enhancing drug and can mask lameness and pain, jeopardizing horse and rider safety." *Mattera II*, 100 F.4th at 738.

[4] Available at https://khrc.ky.gov/Documents/22-0010%20%20Amr%2F.%20Zedan%20-%20Medina%20Spirit%20DQd-corrected.pdf [https://perma.cc/G5PF-VA4C].

[5] Available at https://khrc.ky.gov/Documents/22-0009%20%20Robert%20A.%20Baffert%20-%20Class%20C-corrected.pdf [https://perma.cc/ZDV5-EWJ4].

order of finish for pari-mutuel wagering purposes shall be final, and no subsequent action shall set aside or alter the official order of finish for the purposes of pari-mutuel wagering"); *see also* [R. 90, pp. 6–7 (Defendants' Motion to Dismiss) (citing *id.*)].

As mentioned, Plaintiffs bet on Mandaloun in the 2021 Derby. They individually bet between $4,575, [R. 20, ¶ 13 (Plaintiff Wiley's bet)], and five dollars, *id.* ¶ 9 (Plaintiff Mauer's bet). *See generally id.* ¶¶ 7–36. They lost their bets based on the "official" race-day order of finish which placed Medina Spirit first and Mandaloun second.[6] *Id.* ¶ 6. The Plaintiffs assert that those who place bets do so under the expectation that participants in the Derby will do so in compliance with racing rules and regulations, which prohibit certain substances, such as betamethasone, in competing horses. *Id.* ¶¶ 76–78; *see also* KHRC, Medication Guidelines, 810 Ky. Admin. Regs. 8:010–070.[7] They allege injury due to Medina Spirit's drug violation, arguing they "would have won, but for the illegal, drug-induced win by Medina Spirit." *Id.* ¶¶ 7-36.

By way of brief background, Plaintiffs Beychok, Kaufman, Mauer, and Wunderler filed the initial complaint in this action on July 23, 2021, in the United States District Court for the District of New Jersey. [R. 1].[8] The plaintiffs later filed their Amended Complaint, [R. 20], which remains the operative pleading. After full briefing on a previous motion to dismiss filed by

---

[6] The plaintiffs seek to bring this action as a class action, though the certification has not yet been sought. *See generally* [R. 20]. The plaintiffs currently named in the action all bet on the second-place horse, *id.* ¶¶ 6–36, but assert that the class includes individuals who bet on horses who "finished second, third, fourth, and fifth, and so on." *Id.* ¶ 83.

[7] In particular, *see* Post-race Sampling and Testing Procedures, 810 Ky. Admin. Regs. 8:060 (eff. July 1, 2024). The regulations currently in effect have been updated slightly from those in effect in 2021, but both require testing the winning horse after the race. *See* 810 Ky. Admin. Regs. 8:060 (eff. May 31, 2019).

[8] The plaintiffs also filed two actions on similar grounds in the Central District of California in 2021, but those were voluntarily dismissed "before the Court made any significant rulings." *See* [R. 59, p. 5 (Fabiarz, J) (referencing *Beychok v. Baffert*, Case No. 2:21-cv-4045 (C.D. Cal. 2021); *Kaufman v. Baffert*, Case No. 2:21-cv-04308 (C.D. Cal. 2021))]. Moreover, different plaintiffs filed an action in the Western District of Kentucky in 2022 based on "the same essential alleged acts." *Id.* at 5–6 (citing *Mattera v. Baffert*, Case No. 3:22-cv-156-DJH (W.D. Ky. 2022) (Hale, J)].

Defendants and an unsuccessful mediation, [R. 22]; [R. 30]; [R. 31]; [R. 32]; [R. 43], the New Jersey Court transferred this case to the Western District of Kentucky, at which point it was assigned to the undersigned. [R. 59, p. 30]; [R. 61].

The Amended Complaint alleges six causes of action: (1) violations of the federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), *id.* ¶¶ 167–77 (Count I); (2) conspiracy to violate the RICO Act under 18 U.S.C. §§ 1962(d), 1962(c), *id.* ¶¶ 178–87 (Count II); (3) violations of twenty-three state RICO laws, *id.* ¶¶ 188–97 (Count III); (4) conspiracy to violate state RICO laws, *id.* ¶¶ 198–204 (Count IV); (5) common law fraud, *id.* ¶¶ 205–212 (Count V); and (6) equitable fraud, *id.* ¶¶ 213–220 (Count VI). Specifically, they allege that each Plaintiff's wagers on the 2021 Derby "would have won, but for the illegal, drug-induced win by Medina Spirit." *Id.* ¶¶ 7–36, 91; *see also* ¶ 92 ("But for the illegal entrance of Medina Spirit into the race, Plaintiff Beychok would not have lost the $966.00 invested in the race and would have instead won . . . ."). Based on these allegations, Plaintiffs requested relief including "ordering Defendants to pay to Plaintiffs and the Class the amount they would have won, but for the illegal doping of Medina Spirit." *Id.* at 47 (Request for Relief, ¶ (h)).

## II.    LEGAL STANDARD

Rule 12 of the Federal Rules of Civil Procedure provides grounds upon which a defendant may move to dismiss a claim. Relevant here are Rule 12(b)(1) and Rule 12(b)(6). *See* [R. 90, p. 1]. First, under Rule 12(b)(1), a defendant may move to dismiss a claim for lack of subject matter jurisdiction. If subject matter jurisdiction is challenged pursuant to this rule, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg. Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

In ruling on a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430

[6]

(6th Cir. 2008). The Court can also consider public records and documents appropriate for the taking of judicial notice, even those not referenced in the complaint, without converting the Motion to Dismiss into one for summary judgment. *See, e.g.*, *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003), *holding modified on other grounds*, *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010).

## III.    DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss on two grounds: (1) lack of subject matter jurisdiction based on Article III standing principles; and (2) for failure to state a claim under Rule 12(b)(6). [R. 90, p. 1]. The Defendants argue:

> First, Plaintiffs claims are barred by Kentucky's rules of racing, and corresponding case law, which state that that all wagers and payouts are final on race day once the race results are declared official. Second, Plaintiffs have no standing and fail to state valid claims for violations of federal or state RICO as a matter of law. Third, Plaintiffs' common-law fraud claims fail to state a claim that is plausible on its face and common-law fraud claims do not extend to gambling losses.

*Id.* at 4–5. The Court will begin, as it must, with Defendants' standing argument.

### A.    Standing

Defendants argue that Plaintiffs lack standing to bring their claim because they cannot assert an injury due to the KHRC rules and prior court decisions interpreting those rules. *See* [R. 90, pp. 11]. Defendants conflate their Rule 12(b)(6) injury arguments, discussed below, with constitutional standing. Although relevant to their 12(b)(6) arguments, the rules of racing do not preclude the plaintiffs from asserting constitutional standing.

Under Article III of the Constitution, a federal court's jurisdiction is limited to "Cases" and "Controversies." U.S. Const., Art. III, § 2. "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish Article III standing, a plaintiff must demonstrate "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." *Id.* at 157–58 (quoting *Lujan*, 504 U.S. at 560–61) (cleaned up).

Motions to dismiss for lack of standing are properly addressed under Rule 12(b)(1) for lack of subject matter jurisdiction, not Rule 12(b)(6), as cited by Defendants. *See, e.g.*, *State by & through Tennessee Gen. Assembly v. United States Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019). Regardless, the Sixth Circuit applies the 12(b)(6) standard—"*Twombly*'s plausibility test"—when assessing standing and looks for plaintiffs to "'clearly . . . allege facts demonstrating' standing." *See Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 543–44 (6th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

A challenge under Rule 12(b)(1) is either a "facial attack" or a "factual attack." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citations omitted). A facial attack "questions merely the sufficiency of the pleadings," while a factual attack "raises a factual controversy." *Id.* "A party raising a facial challenge argues that a complaint does not adequately plead standing even accepting its facts as true." *Ass'n of Am. Physicians*, 13 F.4th at 543. Therefore, "[w]hen reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Gentek*, 491 F.3d at 300; *see also Ass'n Am. Physicians*, 13 F.4th at 543 (extending "*Twombly's* plausibility test" to a 12(b)(1) motion and instructing courts to "[a]ccept[] as true the complaint's factual allegations (as opposed to its legal conclusions)" and determine whether a plaintiff "asserts a 'plausible claim'" for standing). Defendants' argument centers on their assertion that "[t]he entire theory of Plaintiffs' case . . . is not a valid theory or compensable injury," and does not, for the

[8]

sake of their standing argument, question the Plaintiffs' factual allegations. *See* [R. 90, pp. 5–6]. As such, the Court will treat it as a facial attack on standing.

Defendants focus their standing arguments on the injury-in-fact requirement, the "[f]irst and foremost of standing's three elements." *Spokeo*, 578 U.S. at 339 (cleaned up). To establish an injury in fact, the alleged injury must be "concrete and particularized" and "actual or imminent," not "conjectural" or "hypothetical." *Driehaus*, 573 U.S. at 158 (quoting *Lujan*, 504 U.S. at 560) (internal quotation marks omitted).

Defendants first assert, as to injury, that "Plaintiffs do not have standing to complain (and cannot state a claim) because Kentucky law specifically provides that Medina Spirit's subsequent disqualification provides them no recourse as a matter of law." [R. 90, p. 8]. Courts must be careful, however, not to confuse a plaintiff's constitutional standing and the merits of their claim. *See CHKRS v. City of Dublin*, 984 F.3d 483, 489 (6th Cir. 2021) (citing *Trump v. Hawaii*, 585 U.S. 667, 699 (2018) ("[J]ust because a plaintiff's claim might fail on the *merits* does not deprive the plaintiff of *standing* to assert it." (emphasis in original)). The Sixth Circuit has rejected the argument that "the requirement that claimants establish the violation of a 'legally protected right or interest' creates an independent fourth requirement to establish standing." *Gerber v. Herskovitz*, 14 F.4th 500, 507 (6th Cir. 2021) (first citing *CHKRS*, 984 F.3d at 488; then citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89–90 (1998)). "Rather," the Court held, "the phrase requires only that the plaintiff have a 'right to relief if the court accepts' the plaintiff's legal position about the meaning of a constitutional provision or a statute." *Id.* (quoting *CHKRS*, 984 F.3d at 488).

Stated another way, whether or not the Plaintiffs' case may fail on the merits given the KHRC rules for racing is irrelevant when considering standing. *See, e.g.*, *Kentucky v. Yellen*, 54

[9]

F.4th 325, 349 n.16 (6th Cir. 2022) (finding it "inappropriate for [the court], at the justiciability stage, to render a merits interpretation of the [legal provision at issue] and to then declare based on that interpretation that the controversy is not even justiciable") (citing *Fed. Election Comm'n v. Cruz,* 596 U.S. 289, 298 (2022) ("For standing purposes, we accept as valid the merits of appellees' legal claims."))). Further, the cases Defendants rely on fail to address constitutional standing. *See, e.g.*, *Mattera v. Baffert* (*Mattera I*), No. 3:22-cv-156-DJH (E.D. Ky. July 20, 2023),[9] *aff'd, Mattera II*, 100 F.4th 734 (Hale, J.) (making no mention of standing); *White v. Turfway Park Racing Ass'n, Inc.* (*White I*), 718 F. Supp. 615, 620 (E.D. Ky. 1989) (addressing the merits and finding Plaintiffs had no "standing" in the context of a particular racing rule to challenge the order of finish because the rule at issue did not include bettors in the group of people eligible to lodge a challenge, but nowhere addressing constitutional standing) (citing what has been renumbered as 810 Ky. Admin. Regs. 4:060 § 1(1)); *White v. Turfway Park Racing Ass'n, Inc.* (*White II*), 909 F.2d 941, 945 (6th Cir. 1990), *overruled in part on other grounds*, *Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 217 n.4 (6th Cir. 1992) (noting "*the rules'* refusal to grant standing to bettors to challenge the eligibility of horses" (emphasis added)); *see also* [R. 90, p. 7 (citing 810 Ky. Admin. Regs. 4:060 § 1(1))]; *id.* at 8–10 (relying on *White I*); *Youst v. Longo*, 729 P.2d 728 (Cal. 1987) (making no mention of standing)).

The Defendants fail to address the imminence or actuality of the Plaintiffs' alleged injuries, but finally assert the Court should consider whether the alleged injuries are sufficiently "concrete." *See* [R. 90, p. 10]. The Supreme Court has directed courts, in evaluating concreteness, that "'history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider'. . . [so] courts should assess whether the alleged injury to the plaintiff

---

[9] Available at [R. 90-3].

has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (first quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 274 (2021); then quoting *Spokeo*, 578 U.S. at 341). The defendants rely on this language to argue the plaintiffs cannot demonstrate a concrete harm because "the overwhelming weight of common law, regulatory authority, and tradition directly precludes any action by aggrieved gamblers to recoup losses sustained in failed horseracing wagers and specifically denies them any recovery." [R. 90, pp. 10–11]. Again, Defendants conflate their merits arguments with constitutional standing.

The Supreme Court made clear that "certain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and *monetary harms*." *TransUnion*, 594 U.S. at 425 (emphasis added). Plaintiffs plainly assert monetary harms, which are "traditionally" recognized as concrete injuries for purposes of standing. *See id*. The fact that Kentucky law may bar Plaintiffs' recovery is thus "not relevant" for purposes of Article III standing. *Cf. Shulman v. Kaplan*, 58 F.4th 404, 409 (9th Cir. 2023) (finding standing existed because "[a]n award of money damages is the quintessential remedy for a civil RICO violation" and reasoning that "the fact that Appellants seek damages for economic harms related to cannabis is not relevant to whether a court could, theoretically, fashion a remedy to redress their injuries."). The Court finds the injury-in-fact requirement has been satisfied.

Defendants offer little or no challenge to the second or third standing prongs, traceability and redressability. They briefly allude to traceability issues by arguing "[c]ourts do not try to determine how a race might have finished if a particular horse had been included or excluded." [R. 90, p. 8]. The cases they cite to, while relevant on the merits arguments as explained below, do not address the issue of standing or traceability. *See id.* (first citing *Class Racing Stable, LLC v.*

[11]

*Breeders' Cup Ltd.*, No. CV 5:16-200, 2017 WL 562175 (E.D. Ky. Feb. 10, 2017); then citing *Funny Cide Ventures, LLC v. Miami Herald Pub. Co.*, 955 So. 2d 1241, 1247 (Fla. Dist. Ct. App. 2007) (Farmer, J, concurring)).

Despite the parties' lack of engagement with the last two elements, the Court must nonetheless assure itself of jurisdiction and address the remaining elements of standing. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case."); *see also Nat'l Repub. Sen. Comm. v. FEC*, 712 F. Supp. 3d 1017, 1023 (W.D. Ohio 2024) (holding that, even though the parties only disputed standing for some of the plaintiffs, " as standing is jurisdictional, the parties' agreement as to standing is irrelevant—the Court has an independent obligation to assure itself it has subject matter jurisdiction over the dispute"). The Court finds that, if it accepts Plaintiffs' legal theory of injury, then they have sufficiently alleged traceability and redressability. Plaintiffs' claims that they would have won their bets but for Defendants' racing Medina Spirit with betamethasone in his system is "fairly traceable to challenged action[s] of the defendant[s]." *See Lujan*, 504 U.S. at 560 (cleaned up). Should the Court find for Plaintiffs and award damages, the injury would be redressed. *See Gerber*, 14 F.4th at 505 ("If the district court awarded damages . . . that relief would redress the [plaintiffs'] alleged injuries); *cf. Shulman*, 58 F.4th at 409 (holding that, when considering redressability, the Court should "assume that the plaintiff's claim has legal merit" and arguments as to the merits are "not relevant as to whether a court could, theoretically, fashion a remedy" (cleaned up)). Therefore, the Plaintiffs have met their burden of establishing Article III standing, and Defendants' Motion to Dismiss will be denied as it pertains to standing.

### B.    Failure to State a Claim on the Merits

Alternatively, Defendants argue Plaintiffs have failed to state a claim for relief under Ruler 12(b)(6) because the KHRC's rules of racing and this Court's precedent bar "any recovery" by Plaintiffs, and, in any event, Plaintiff's claims are too speculative. [R. 90, pp. 11, 21].

### 1.    Federal RICO Claims

The Court will begin by addressing Plaintiffs' federal RICO claims, (Counts I and II), 18 U.S.C. § 1962(c)–(d). *See* [R. 90, pp. 11, 21]. "RICO takes aim at 'racketeering activity,' which it defines as any act 'chargeable' under several generically described state criminal laws [or] any act 'indictable' under numerous specific federal criminal provisions." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 481 (1985) (citing 18 U.S.C. § 1961(1)). It also "affords a civil remedy to an individual who is injured by virtue of certain types of unlawful activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006).

Civil plaintiffs may recover under § 1964(c) if they were "injured in [their] business or property by reason of a violation of § 1962." Courts have broken down a RICO plaintiff's pleading burden into three essential elements: "(1) a violation of § 1962, (2) an injury to his business or property, and (3) that his injury was proximately caused by the RICO violation." *Stooksbury v. Ross*, 528 F. App'x 547, 556 (6th Cir. 2013) (citing *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268–69 (1992); *see also Grow Michigan, LLC v. LT Lender, LLC*, 50 F.4th 587, 594 (6th Cir. 2022) (outlining civil RICO elements as "(1) two or more predicate racketeering offenses, (2) the existence of an enterprise affecting interstate commerce, (3) a connection between the racketeering offenses and the enterprise, and (4) injury by reason of the above").[10]

---

[10] Some courts use the phrase "RICO standing" to explain a plaintiff's burden under the RICO statute. *See, e.g.*, *Stooksbury*, 528 F. App'x at 566. However, the Sixth Circuit has cautioned that such a term is a "misnomer" because proximate cause is "not a jurisdictional requirement." *See Grow Michigan*, 50 F.4th at 593. *But see Fenner v. Gen.*

Starting with the first element, to state a RICO violation under § 1962(c), a plaintiff "must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Moon*, 465 F.3d at 723 (quoting *Sedima*, 473 U.S. at 496). A RICO conspiracy claim under § 1962(d) must also allege the elements of a substantive RICO claim, plus an agreement to violate that provision. *See Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 805–06 (6th Cir. 2015) (citing *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012)).

"Another limitation in § 1964(c) . . . is the requirement that a plaintiff be 'injured in his business or property' in order to bring a civil action." *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 563–64 (6th Cir. 2013) (en banc). "While the Supreme Court has yet to definitively interpret ['injured in his business or property'] as it appears in § 1964(c)," the Sixth Circuit, sitting en banc, held that personal injuries are not compensable, though monetary injuries are properly considered property injuries. *Id.* Moreover, "a RICO injury must be concrete, not intangible or speculative." *See In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1067 (E.D. Mich. 2018) (citing *Saro v. Brown*, 11 Fed. App'x 387, 389 (6th Cir. 2001)); *see also Fleischhauer v. Feltner*, 879 F.2d 1290, 1299 (6th Cir. 1989) (reducing a damages award because the Sixth Circuit "require[s] plaintiffs in RICO cases to set out a reasonable and principled basis of recovery" which is "not based upon mere speculation and surmise").

The final requirement to stating a RICO claim is proximate causation. Courts have interpreted the "by reason of" language in § 1964(c) to require plaintiffs to show a causal link between the violation and their injuries. *See Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 419 (6th Cir. 2013) ("It is well-settled that proximate cause is an essential ingredient of

---

Motors, LLC, 113 F.4th 585, 603–05 (6th Cir. 2024) (continuing to use the phrase "standing" when determining whether Plaintiffs asserted a claim under RICO).

any civil RICO claim. The language of the statute limits the scope of liability to those injuries suffered "by reason of" an alleged violation of one of the criminal provisions." (quoting 18 U.S.C. § 1964(c)). A plaintiff "must show 'that the defendant's violation was both a factual and proximate cause of his injury.'" *Grow Michigan*, 50 F.4th at 594 (quoting *Gen. Motors, LLC v. FCA US, LLC*, 44 F.4th 548, 559 (6th Cir. 2022)). This requirement is "demanding" and "require[s] a RICO plaintiff to show that the defendant's racketeering offense led directly to the plaintiff's injuries," which "elevates a plaintiff's burden by requiring more than a showing of mere foreseeability." *Id.*

If a plaintiff cannot show an adequate injury or causation to state a substantive RICO claim, they similarly cannot maintain a conspiracy claim. *See Huang v. Presbyterian Church (U.S.A.)*, 346 F. Supp. 3d 961, 982 (E.D. Ky. 2018) (holding Plaintiff could not maintain a RICO conspiracy action when they failed to assert a substantive violation and failed to establish proximate cause) (first citing *Beck v. Prupis*, 529 U.S. 494, 505 (2000); then citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008)); *Wallace*, 714 F.3d at 419 ("The Supreme Court has held in no uncertain terms that under each provision a plaintiff must show that the predicate acts alleged 'not only [were] a 'but for' cause of his injury, but [were] the *proximate cause* as well.'" (emphasis in original) (quoting *Holmes*, 503 U.S. at 268)); *see also Wallace v. Midwest Fin. & Mortg. Servs.*, Inc., 728 F. Supp. 2d 906, 914 (E.D. Ky. 2010), *rev'd in part on other grounds*, 714 F.3d 414 (6th Cir. 2013) ("[Plaintiff]'s failure to show that he was injured 'by reason of' a violation of § 1962(c), is also fatal to his RICO conspiracy claim . . . if the claimed injury does not flow from the commission of the established RICO predicates, then there exists no compensable injury under RICO . . . because [Plaintiff] was not directly harmed by the alleged acts . . . it is immaterial whether the Defendants entered into 'an illicit agreement to violate the substantive RICO provision.' 18 U.S.C. § 1962(d)").

[15]

Plaintiffs allege that Defendants engaged in a pattern of racketeering behavior, in violation of § 1962(c), by engaging in "multiple, repeated, and continuous acts of engaging in gambling chargeable under New Jersey, Connecticut, Pennsylvania, and Texas law prohibiting the rigging of a publicly held contest" in violation of § 1961(1)(A) and (5) and doing so in violation of §§ 1961(1)(B), 1961(5) and 18 U.S.C. § 1952(a)(3) in channels of interstate commerce.[11] *See* [R. 20, ¶¶ 172–75]. As to injury and causation, the Plaintiffs specifically allege that each Plaintiff's wagers on the 2021 Derby "would have won, but for the illegal, drug-induced win by Medina Spirit." [R. 20, ¶¶ 7-36]. They contend that "[i]f Medina Spirit had been properly prohibited from competing as a result of the failure to meet this 14-day [betamethasone] withdrawal requirement, Plaintiffs and Class Members would have won" their various bets. *Id*. ¶ 91; *see also id.* ¶ 92 ("But for the illegal entrance of Medina Spirit into the race, Plaintiff Beychok would not have lost the $966.00 invested in the race and would have instead won . . . .").

This is not the first time disappointed bettors have sued based on Medina Spirit's failed drug test and ultimate disqualification from the 2021 Derby. In *Mattera*, a group of bettors who likewise bet on Mandaloun sued Baffert, Baffert Racing, and Churchill Downs for negligence, breach of contract, and other state law claims. *Mattera I*, 3:22-cv-156-DJH, at 1. This Court (Hon. Judge David J. Hale), granted the defendants' motion to dismiss on all claims, finding the bettors' allegations concerning causation and damages too speculative and otherwise barred by the

---

[11] To the extent that Plaintiffs base their allegations of predicate criminal acts on state statutes requiring a finding of fraud, they are held to the "heightened pleading requirements of Rule (9)." *See Heinrich v. Waiting Angels Adopt. Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (citing Fed. R. Civ. P. Rule 9(b)) (explaining the applicability of Rule 9(b) when the plaintiffs alleged predicate acts of federal wire and mail fraud); *see, e.g.*, [R. 20, ¶¶ 3, 174 (citing N.J. Stat. Ann. § 2C:21-11 which falls under Chapter 21—"Forgery and Fraudulent Practices"—and citing Pa. Stat. Ann. tit. 18 § 4109(a)(2) which falls under Chapter 41—"Forgery and Fraudulent Practices"). Under Rule 9(b), Plaintiffs "must state with particularity the circumstances constituting fraud." This is true even for state-law based claims. *Cf. Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 613–14 (6th Cir. 2024) (holding, in the context of a diversity action, that when the court applies state law, "state law governs the burden of proving fraud, Federal Rule of Civil Procedure 9(b) governs the standard for pleading it").

KHRC's rules of racing, in particular, the "finality rule." *See generally id*. After briefing on the instant Motion to Dismiss was complete, the Sixth Circuit affirmed the *Mattera I* court's dismissal, finding the KHRC's finality rule foreclosed plaintiffs' injury allegation. *Mattera II*, 100 F.4th at 739 ("The plaintiffs fail[ed] to state a claim . . . because *they were not harmed* under their sole theory of damages." (emphasis added)). As outlined below, *Mattera* controls the outcome in this case and requires dismissal of all Plaintiffs' claims.

Defendants raise two primary reasons that Plaintiffs fail to assert an injury for RICO purposes: first, that the KHRC rules, as interpreted by *Mattera* and other precedent, bar Plaintiffs from establishing an injury, *see* [R. 90, pp. 5–11]; and second, that Plaintiffs' gambling losses do not support a RICO claim because any supposed injury would be too speculative to permit recovery, *id.* at 12–13. Plaintiffs argue their case is distinguishable from *Mattera* and other cases interpreting the finality rule, and, for the first time in their Response, also argue that their injury is in fact that of a lost "opportunity to win" their bets. *See* [R. 91, pp. 12–13]. The Court agrees with Defendants that the KHRC's finality rule precludes any assignment of injury to Plaintiffs and, in any event, their alleged injury is too speculative to be compensable. Finally, the Court declines to address Plaintiffs' improperly pled lost opportunity theory.

### a.    Plaintiffs' Injury is Barred by The Finality Rule

The defendants argue that the KHRC finality rule and relevant case law foreclose Plaintiffs' ability to recover or assert an injury in this case. [R. 90, p. 5]. Namely, they contend Plaintiffs' approach "is not a valid theory or compensable injury because the Plaintiffs' claims are expressly *prohibited* under the rules and regulations governing all racing in the Commonwealth, including the Kentucky Derby." *Id.* at 6.

Plaintiffs filed their Amended Complaint in November 2021, several months *before* the stewards ultimately disqualified Medina Spirit and re-ordered the finish with Mandaloun first.

[17]

[R. 20]. As to injury, they allege that each Plaintiff's wagers on the 2021 Derby "would have won, but for the illegal, drug-induced win by Medina Spirit." [R. 20, ¶¶ 7–36]. They contend that "Defendants intentionally entered Medina Spirit into the Kentucky Derby using performance-enhancing substances, which resulted in its disqualification," meaning "Plaintiffs selected the rightful winner and have been cheated out of their financial winnings by Defendants." [R. 91, p. 13]. For relief, the plaintiffs request that the Court "order[] Defendants to pay to Plaintiffs and the Class amount they would have won, but for the illegal doping of Medina Spirit." [R. 20, pp. 46–47 (Request for Relief (h))].

By way of brief background, administrative regulations by the KHRC govern horse racing and betting in Kentucky. *See generally* 810 Ky. Admin. Regs. 1:001–9:010. The KHRC's rules of racing govern a wide range of issues, including Chapter 6, which regulates pari-mutuel wagering. *Id.* at 6:001–6:030. In particular, the rules feature a finality rule, which states

> [o]nce satisfied that the order of finish is correct and that the race has been properly run in accordance with the rules and [Ky. Admin. Regs.] Title 810, the stewards shall order that the official order of finish be confirmed and the official sign posted for the race. *The decision of the stewards as to the official order of finish for pari-mutuel wagering purposes shall be final, and no subsequent action shall set aside or alter the official order of finish for the purposes of pari-mutuel wagering.*

*Id.* at 4:040 § 17 (emphasis added); *see also White II*, 909 F.2d at 944 (referring to the rule as "the finality rule"). The rules expressly provide that a subsequent disqualification does not affect wagers: "[i]f a horse is disqualified after a race has been declared official for pari-mutuel payoff and causes revision of the order of finish . . . [t]he pari-mutuel payoff shall not be affected in any way." *Id.* at 4:060 § 7. The rules further reiterate that

> [p]ayment of valid pari-mutuel tickets shall be made on the basis of the order of finish as declared "official" by the stewards or judges. *A subsequent change in the order of finish or award of purse money that could result from a subsequent ruling by the stewards, judges, or corporation shall not affect the pari-mutuel payout.*

*Id.* at 6:030 § 10(2) (emphasis added).

[18]

Citing *Mattera* and the rules of racing, Defendants assert that the court "already rejected the very claims at issue in this case." [R. 90, p. 7]. As mentioned, the *Mattera* plaintiffs, like the current Plaintiffs, placed bets on Mandaloun in the 2021 Derby. *See generally Mattera I*, No. 3:22-cv-156-DJH. The *Mattera* plaintiffs likewise sued the instant Defendants, Baffert and Baffert Racing, and also sued Churchill Downs, alleging various state law claims including negligence. *Id.* They alleged that after Medina Spirit's disqualification for a drug violation, "they 'suffered legal injuries and damages in the form of unsettled pari-mutuel wagers.'" *Id.* at 5–6 (quoting the plaintiffs' complaint). Specifically, the *Mattera* plaintiffs requested that defendants pay their wagers based on the post-disqualification order of finish rather than the official race-day finish and "in an amount representing the payout of the winning pari-mutuel wagers as calculated on the new, complete and official order of finish." *Id.* [R. 1-1, ¶ 135, *therein*]; *id* [R. 1-1, pp. 38–39, ¶ 3, *therein*]. This Court granted the *Mattera* defendants' motion to dismiss relying, in part, on the fact that the plaintiffs could not adequately plead damages "based on an *unofficial order* of finish." *Id.* at 8–9 (emphasis in original). Citing and interpreting the KHRC's finality rules, the court held "the only persons entitled to payment on pari-mutuel wagers are those who have tickets that match the stewards' *official order* of finish on the day of the race; the fact that Plaintiffs had 'winning wagers' *after the disqualification* of Medina Spirit does not entitle them to damages." *Id.* at 9 (emphasis in original) (first citing 810 Ky. Admin. Regs. 6:030 §10(2); then citing *id.* at 4:040 § 17).

On appeal, the Sixth Circuit affirmed, holding that "the plaintiffs fail[ed] to state a claim . . . because *they were not harmed* under their sole theory of damages." *Mattera II*, 100 F.4th at 739 (emphasis added). The court noted that "[t]he plaintiffs' claims all hinge on the theory that they have 'unpaid winning wagers'" as a result of betting on Mandaloun. *Id.* at 738 (quoting the plaintiffs' appellate brief). However, the court found that "under Kentucky law governing pari-

[19]

mutuel wagering, *the first official order of finish is final*. Under that order, *the plaintiffs lost their bets*. For this reason, the complaint fail[ed] to state a claim upon which relief can be granted." *Id.* at 738–39 (emphasis added).

The Sixth Circuit relied on a prior case, *White*, wherein the court handled a case involving a similarly disappointed bettor who sued a Kentucky racetrack after it allowed an ineligible horse to race (specifically, the horse raced without posting his workout time, a violation of the rules of racing). *See White I*, 718 F. Supp. at 616–17. The *White* plaintiff argued he would have bet on that horse who went on to win, instead of betting on the second-place finisher, had the workout time been posted per the rules of racing (i.e., plaintiff argued he "would have won" had the rules of racing been followed and the race times posted). *Id.* at 617. Unlike the present case, the first-place finisher was not officially disqualified, but the *White* plaintiff nonetheless argued that he was entitled to the amount he would have won if he had bet on the winner. *Id.* at 617. The *White* court granted the defendant's motion for summary judgment, holding

> The Rules of Racing do not entitle [the plaintiff] to the relief which he seeks. The plaintiff is essentially asking the court to determine that the winner . . . was ineligible, and that the second-place horse should have been declared the official winner of that race. Such a determination is one that is inappropriate for a federal court to make.

*Id.* at 617–18 (cleaned up). The Sixth Circuit affirmed on all grounds. *White II*, 909 F.2d at 945; *see also Mattera II*, 100 F.4th at 740 (discussing *White*).

In analyzing the KHRC rules, the *Mattera II* court explained

> Kentucky administrative regulations govern pari-mutuel wagers on the Derby placed with Churchill Downs. 810 Ky. Admin. Regs. 6:030. These regulations include Kentucky's finality rule. 810 Ky. Admin. Regs. 4:040, § 17. Under the finality rule, the first order of finish marked "official" is the only order that counts for pari-mutuel wagering purposes. [*Id.*]. . . . The rules specify that a subsequent disqualification does not affect wagers. "If a horse is disqualified after a race has been declared official for pari-mutuel payoff and causes revision of the order of finish . . . [t]he pari-mutuel payoff shall not be affected in any way[.]" 810 Ky. Admin. Regs. 4:060 § 7(1).

[20]

100 F.4th at 739–40. Plaintiffs were bound by the rules, the court held, because "[b]ettors consent to these rules when they place a bet." *Id.* at 740 (citing *White II*, 909 F.2d at 944–45); *see also id.* ("The ruling disqualifying Medina Spirit and setting forth the new order of finish confirms that there is no exception here: 'Pari-mutuel wagering is not affected by this ruling.'" (quoting Stewards Ruling 22-0010)). As a result of these rules, "a pari-mutuel wager placed on the Kentucky Derby is a specific prediction of how the horses will be ordered *as determined by the official order of finish for pari-mutuel wagering purposes*." *Id.* (emphasis in original). "A bet is not correctly placed and cannot become correctly placed," therefore, "if it does not match *that* order." *Id.* (emphasis in original). The court declined to "replace the official order of finish for pari-mutuel wagering purposes with another order of finish," as the plaintiffs requested, because "the finality rule bar[red] [that] challenge." *Id.* (first citing 810 Ky. Admin. Regs. 4:040 § 17; then citing *White II*, 909 F.2d at 943).

*Mattera* compels dismissal of Plaintiffs' claims because the instant plaintiffs allege the same injury and theory of damages the *Mattera* courts found foreclosed by the finality rule. As mentioned, Plaintiffs filed their Amended Complaint on November 11, 2021, several months *before* the KHRC stewards disqualified Medina Spirit on February 21, 2022. [R. 20].[12] The Amended Complaint alleges injury due to Medina Spirit's drug violation, arguing they "would have won, but for the illegal, drug-induced win by Medina Spirit." *Id.* ¶¶ 7–36. In Plaintiffs' Response, filed *after* the Stewards Rulings and expressly citing to and relying on the ruling, they further describe their injury as follows: "Plaintiffs' winning bets were not paid out to them. These

---

[12] The Court may consider the Stewards Rulings because they are matters of public record. *See New Eng. Health Care*, 336 F.3d at 501; *see also Mattera II*, 100 F.4th at 740 n.1 (explaining they could consider the Stewards Rulings "because it is a public record referred to in the complaint and central to the claims" (citing *Bassett*, 528 F.3d at 430)). Although the *Mattera* complaint referred to the Stewards Rulings and this complaint did not, the Court "may consider *materials in addition to the complaint* if such materials are public records." *See New Eng. Health Care*, 336 F.3d at 501 (emphasis added). Further, Plaintiff expressly cites to and relies on the Stewards Rulings in their Response. *See, e.g.*, [R. 91, pp. 7–8].

withheld, deserved earnings constitute an injury . . . Defendants' unlawful conduct not only interfered with the contest and Plaintiffs' opportunity to win, but also kept Plaintiffs from being awarded their winnings." [R. 91, p. 6]; *see also id.* at 13 ("Considering Defendants intentionally entered Medina Spirit into the Kentucky Derby using performance-enhancing substances, which resulted in its disqualification, Plaintiffs selected the rightful winner and have been cheated out of their financial winnings by Defendants."); *see also id.* at 5 ("Defendants directly caused Plaintiffs' injuries by depriving them of the opportunity to collect their rightful winning bets . . . ").

Simply put, the *Mattera* plaintiffs and the current plaintiffs both allege that they held "winning" wagers on Mandaloun in the 2021 Derby due to Medina Spirit's disqualification and should accordingly be paid based not on the official order of finish on race-day but the order of finish after Medina Spirit was disqualified, which placed Mandaloun in first place. *Compare Mattera II*, 100 F.4th at 739 (quoting Plaintiffs' argument that "'based on the *new* official order of finish, they [held] correctly placed and unsettled wagers.'"), *with* [R. 91, p. 6 ("Plaintiffs' winning bets were not paid out to them."), *and* [R. 20, pp. 46–47 (Request for Relief (h)) ("Plaintiffs respectfully request the Court. . . order[] Defendants to pay to Plaintiffs and the Class the amount they would have won, but for the illegal doping of Medina Spirit.").

As in *Mattera*, Plaintiffs here "fail to state a claim . . . because *they were not harmed* under their sole theory of damages." *See Mattera II*, 100 F.4th at 739 (emphasis added). Plaintiffs were not harmed because they placed their wagers pursuant to the KHRC rules and knew they were betting on the stewards' race-day official order of finish, not a new, revised order of finish determined after mandatory testing and other procedures. *See id.* at 740 ("[A] pari-mutuel wager placed on the Kentucky Derby is a specific prediction of how the horses will be ordered *as determined by the official order of finish for pari-mutuel wagering purposes*." (emphasis in

[22]

original)); *see also id.* (citing *White II*, 909 F.2d at 944–45) (holding Derby bettors consent to the rules by placing their bets); *see also* 810 Ky. Admin. Regs. 4:060 § 7. As in *Mattera*, the finality rule precludes recovery based on wagers that did not match the race-day official finish order. *See Mattera II*, 100 F.4th at 740 (citing 810 Ky. Admin. Regs. 4:040 § 17). Essentially Plaintiffs "ask[] [the Court] to replace the official order of finish for pari-mutuel wagering purposes with another order of finish." *Id.* As the *Mattera* court found, "[t]he finality rule bars this challenge, . . . [and] there is no exception here." *Id.*

Plaintiffs attempt to distinguish this case from *Mattera* and *White* on several grounds, none of which is persuasive. Plaintiffs argue that "Kentucky courts have . . . never analyzed these claims regarding a RICO claim." [R. 91, p. 10]. But RICO, like the state negligence claims dismissed in *Mattera,* requires an injury, specifically an injury to business or property. *Compare Mattera II*, 100 F.4th at 739 (explaining that negligence requires a showing that "the plaintiffs suffered an actual injury or harm"), *with* 18 U.S.C. § 1964(c) (creating a cause of action for plaintiffs "injured in [their] business or property"). The finality rule precludes any alleged injury to Plaintiffs whether under state law or RICO. *See also* [R. 90, p. 7 (Defendants calling Plaintiffs' claims "identical allegations against the Baffert defendants" to those in *Mattera*)].

Plaintiffs further attempt to distinguish their case from *Mattera* and *White* by clarifying that they "do not sue the Kentucky Derby, the Kentucky Racing Commission, any of the books that handled bets . . . [or] any of the officials or organizers." [R. 91, p. 7]. But *Mattera* also involved claims against the instant Defendants (Baffert and Baffert Racing), not just Churchill Downs, and the *Mattera* court dismissed all claims against all the defendants. *See generally Mattera I*, No. 3:22-cv-156-DJH. Plaintiffs otherwise do not address the *Mattera* case in their briefing. *See* [R. 92, p. 3 (accusing Plaintiffs of trying to "run away from" and "completely ignore" *Mattera*)].

[23]

Plaintiffs also attempt to distance themselves from the KHRC rules, asserting their "claims do not contradict Kentucky's rules and regulations of horse racing. Plaintiffs agree with and concur in the Kentucky Racing Commission's . . . disqualification of Medina Spirit" and that the KHRC has made "the undisputed determination that Mandaloun, Plaintiffs' selected horse, was the rightful winner." [R. 91, pp. 6–7]. The *Mattera* and *White* plaintiffs, however, made the same argument as the Plaintiffs here—that they only sought damages *based on* the pari-mutuel wagers, not a redistribution of the payout as forbidden under the rules. *Compare Mattera I*, 3:22-cv-156-DJH, [R. 1-1, ¶¶ 138–40, *therein* ("Plaintiffs do not seek a claw back or reversal of pari-mutuel payments . . . [nor] a pari-mutuel payout as defined and described [the KHRC rules]. Plaintiffs seek damages . . . calculated upon the pools for the 147th running of the Kentucky Derby.")], *and White I*, 718 F. Supp. at 620 ("Plaintiff also argues that he is not seeking to redistribute the parimutuel payoff, but to use that payoff solely as a measure of damages for his economic loss caused by defendant's negligence or fraud."), *with* [R. 91, pp. 8–9 ("Defendants' argument that awarding Plaintiffs compensation for their injuries would be 'creating a situation where their losing tickets magically became winning one' is without merit. . . . Plaintiffs simply seek retribution for their injury caused by Defendants' intentional violation of the rules.")]. Binding precedent found this argument unavailing, and this Court does as well. *See Mattera II*, 100 F.4th at 740; *see also White I*, 718 F. Supp. at 620.

Along the same lines, like the current Plaintiffs, the *Mattera* plaintiffs attempted to limit the meaning of "pari-mutuel wagering" in both the KHRC rules and the Stewards Ruling to only official pari-mutuel payouts, and thus leave open the ability to recover damages based on the wagering. *Compare Mattera I*, 3:22-cv-156-DJH, [R. 1-1, ¶¶ 139–40, *therein* ("Plaintiffs do not seek a pari-mutuel payout as defined in 810 KAR 6:020 and 810 KAR 6:030E. Plaintiffs seek

damages . . . *based on the pari-mutuel principles* [of those regulations]" (emphasis added))], *with* [R. 91, p. 8 ("While the Stewards Ruling states that it did not apply to parimutuel betting, Plaintiffs reaffirm they are not suing the Commission or the books they made their bets with.")]. Nonetheless, the decision in *Mattera* made clear that the rules in general and the statement in the Stewards Ruling that "[p]ari-mutuel wagering is not affected by [the] ruling" apply to allegations of damages based on an amended finishing order. *See Mattera II*, 100 F.4th at 470 (first citing 810 Ky. Admin. Regs. 4:040 § 17; then citing Stewards Ruling 22-0090); *see also Ky. State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 300 (Ky. 1972) (explaining that when the 1968 Kentucky Derby purse was redistributed after disqualifying the first-place finisher for impermissible drugs "[t]he betting on the race and the payment of parimutuel tickets were not affected.").[13]

As in *Mattera* and *White*, the finality rule bars Plaintiffs from recovering on their theory of damages. *See Mattera II*, 100 F.4th at 740 ("The finality rule bars this challenge"); *White II*, 909 F.2d at 945 (affirming the district court's grant of summary judgment "given the repeated directive in the rules that the order of finish, as declared by the steward, shall be binding on pari-mutuel

---

[13] Without explanation or support, Plaintiffs also argue "[t]he Stewards Ruling is the official decision of the Commission for the results of the 147th Kentucky Derby for all the contestants *who did not cheat.*" [R. 91, p. 8 (emphasis added)] This undeveloped argument will not be considered by the Court. *See Members Heritage Credit Union v. New York Marine & Gen. Ins. Co.*, 5:21-CV-207, 2023 WL 4876383, *13 (E.D. Ky. July 31, 2023) (explaining that the party's argument "is wholly undeveloped, and the Court need not consider it); *Brown v. Astrue*, No. 09-387, 2010 WL 4878866, *3 (E.D. Ky. Nov. 24, 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). In any event, the *White II* court appears to have foreclosed this argument when it rejected the plaintiff's argument "that the authority the district court relied upon to find that wagerers are bound by stewards' rulings only applies in the absence of fraud or bad faith." *See White II*, 909 F.2d at 946. Rather, the Court found that *Youst*, 729 P.2d 728, and *Cramer v. New York State Racing Ass'n*, 525 N.Y.S.2d 938 (N.Y. App. Div. 1988), "len[t] some support to the proposition that even in the presence of wrongdoing, the official winner as declared by the stewards should not be disturbed." *Id.*; *see also* 810 Ky. Admin. Regs. 4:060 § 7 ("If a horse is disqualified after a race has been declared official for pari-mutuel payoff and causes revision of the order of finish in the race: (1) The pari-mutuel payoff shall not be affected in any way.").

bettors"). The RICO claims must be dismissed for lack of injury. *See Mattera II*, 100 F.4th at 739

("[P]laintiffs fail to state a claim . . . because they were not harmed.").

### b. Plaintiffs' Injury Is Too Speculative

Additionally, Plaintiffs' alleged injury is too speculative to be compensable under RICO.

"[A] RICO injury must be concrete, not intangible or speculative." *See Duramax Diesel*, 298 F.

Supp. 3d at 1067 (citing *Saro*, 11 Fed. App'x at 389); *see also Chaset v. Fleer/Skybox Int'l, LP*,

300 F.3d 1083, 1087 (9th Cir. 2002) ("[A]civil RICO plaintiff . . . must show that he has suffered

a *concrete financial loss*." (emphasis added) (quoting *Fireman's Fund Ins. Co. v. Stites,* 258 F.3d

1016, 1021 (9th Cir. 2001))). A plaintiff's injury allegations must demonstrate a "requisite degree

of definiteness and certainty," including "proof of a concrete financial loss and not mere injury to

valuable intangible property interest." *See Brown v. Ajax Paving Indus., Inc.*, 773 F. Supp. 2d 727,

737 (E.D. Mich. 2011), *aff'd*, 752 F.3d 656 (6th Cir. 2014), and *abrogated on other grounds

by Brown v. Cassens Transp. Co.*, 675 F.3d 946 (6th Cir. 2012). "[T]he measure of damages" in a

civil RICO case must "'not [be] based upon mere speculation and surmise.'" *See Brown*, 675 F.3d

at 697, *overruled on other grounds by*, *Jackson*, 731 F.3d 556 (quoting *Fleischhauer*, 879 F.2d at

1299–1300).

Plaintiffs contend that "[i]f Medina Spirit had been properly prohibited from competing as

a result of the failure to meet this 14-day [betamethasone] withdrawal requirement, Plaintiffs and

Class Members would have won" their various bets. [R. 20, ¶ 91]; *see also id.* ¶ 92 ("But for the

illegal entrance of Medina Spirit into the race, Plaintiff Beychok would not have lost the $966.00

invested in the race and would have instead won . . . ."). Courts, including this Court in *Mattera I*,

have rejected similar arguments by disappointed horserace bettors as impermissibly asking the

Court to speculate and to determine the outcome of a horse race, which courts are ill-equipped to

do. *See Mattera I*, 3:22-cv-156-DJH, at 8–9, *aff'd*, *Mattera II*, 100 F.4th 734 (calling the plaintiffs'

[26]

damages allegations "uncertain[,] and speculative and, thus, not recoverable." (quoting *Class Racing Stable*, 2017 WL 562175, at *2)); *White I*, 718 F. Supp. at 620, *aff'd*, *White II*, 909 F.2d 941 (holding "in order for plaintiff to recover, the court would still be required to determine that the horse which the plaintiff bet on . . . was the winner of that race. . . . Such a determination is clearly one which the stewards should make, not a federal district court").

In *Mattera*, as discussed, the plaintiffs lodged nearly identical damages allegations as the current Plaintiffs, claiming they had "unsettled pari-mutuel wagers" (i.e., winning wagers) based on the later order of finish after Medina Spirit's disqualification. [*Mattera I*, 3:22-cv-156-DJH, at 8]. Judge Hale dismissed all claims finding plaintiffs' damages theory "remote, uncertain[,] and speculative and, thus, not recoverable." *See id.* at 8–9 (citing *Class Racing Stable*, 2017 WL 562175, at *2). The same is true here.

Similarly, in *White*, the court found "[t]he Rules of Racing [did] not entitle [the plaintiff] to the relief which he [sought]" when he argued that the defendant's failure to post a horse's workout time, in violation of the rules, caused him to bet on a later-finishing horse instead of the winner. *See White I*, 718 F. Supp. at 617–18. As with disgruntled 2021 Derby bettors, he essentially argued he "would have won" had the rules of racing been followed. *Id.* at 617.

Plaintiffs here make an analogous argument that "[b]ut for the illegal entrance of Medina Spirit into the race, Plaintiff[s] . . . would not have lost [their bets] and would have instead won." [R. 20, ¶ 92]. Although Plaintiffs argue otherwise, they are "in essence asking this court to determine the outcome of a horse race." *White I*, 718 F. Supp. at 622; *see* [R. 91, ¶ 91 (Plaintiffs allege that "[i]f Medina Spirit had been properly prohibited from competing as a result of the failure to meet this 14-day [betamethasone] withdrawal requirement, Plaintiffs and Class Members

[27]

would have won" their various bets)]. In their Response, which was filed *after* Medina Spirit was actually disqualified, Plaintiffs insist that *White* is inapplicable because, in this case,

> [i]t is not a hypothetical situation for the court to decide what would have happened or could have happened had Defendants not cheated and provided Medina Spirit with a banned substance. The Kentucky Racing Commission settled that question by making the undisputed determination that Mandaloun, Plaintiffs' selected horse, *was the rightful winner*.

[R. 91, p. 8 (emphasis added)].

Nowhere, however, does the Stewards Ruling state as much. The Stewards Ruling simply disqualifies Medina Spirit, redistributes the purse according to the new order of finish, and expressly provides that "Pari-mutuel wagering is not affected by this ruling." Stewards Ruling 22-0010. Nowhere does the Stewards Ruling find that Mandaloun would have won but for Medina Spirit racing with betamethasone in his system. No one can know that. *See Class Racing Stable*, 2017 WL 562175, at *2 (citing *Funny Cide*, 955 So. 2d at 1247 (Farmer, J, concurring) ("[T]here is no certainty in horse racing"). As one court observed in discussing a challenge to a horse race, "[t]he prospect of a win is touched by so many variables it's just naturally in doubt." *See Funny Cide*, 955 So. 2d. at 1247. The Court will not attempt to list the innumerable variables at play in the 2021 Derby; it is enough to state that no one can know, with sufficient certainty to state an injury, that had Medina Spirit not raced or not had betamethasone in his system, Mandaloun would have won the 2021 Derby. Plaintiffs' injury theory, that Mandaloun (and their wagers on Mandaloun) "would have won" had Medina Spirit not raced or used betamethasone is too speculative to survive dismissal. *Cf. Youst*, 729 P.2d at 737 (finding "no cause of action exists for interference with [a] horseracing event" after "tak[ing] judicial notice of the impossibility of predicting" whether a certain horse "would have finished in a better position" absent some alleged wrongdoing); *see also Duramax Diesel*, 298 F. Supp. 3d at 1067 (citing *Saro*, 11 Fed. App'x at 389) ("[A] RICO injury must be concrete, not intangible or speculative.").

[28]

Defendants further assert generally that "gambling losses are insufficient injuries to create civil RICO standing as a matter of law." [R. 90, p. 12]. This is so, they argue, because "Plaintiffs knowingly and voluntarily took the risk to place bets on the Kentucky Derby with the governing rules," *id.* at 16, and "gambling injuries are by their very nature speculative," *id.* at 13.

As a general matter, courts across the country have been reluctant to recognize gambling losses as injuries for RICO plaintiffs. *See, e.g.*, *McLeod v. Valve Corp.*, No. C16-1227, 2016 WL 5792695, at *2 (W.D. Wash. Oct. 4, 2016) (holding "the case law in the Ninth Circuit is clear: gambling losses are not sufficient injury to business or property for RICO standing"); *Adell v. Macon Cnty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1238 (M.D. Ala. 2011) (citing *Green v. Azar Corp.*, 2003 WL 22012205, at *2 (N.D. Ill. Aug. 22, 2003)) (holding gambling loss not a compensable injury); *In re Doug Grant, Inc. v. Greate Bay Casino Corp.* (*Doug Grant I*), 3 F. Supp. 2d 518, 534 (D.N.J. 1998), *aff'd In re Doug Grant, Inc. v. Greate Bay Casino Corp.* (*Doug Grant II*), 232 F.3d 173, 187–88 (3d Cir. 2000) (holding the "plaintiffs RICO claims fail because they have not shown any predicate acts or any injury to 'business' or 'property'" by alleging "the loss of gambling income").

For example, in *Adell*, the plaintiffs alleged gambling losses as an injury under RICO when they gambled at a casino where certain machines had allegedly been rigged to favor a local politician. *Adell*, 785 F. Supp. 2d at 1237. The court was clear, however, that

> [w]hen [the plaintiff] decided to gamble, he paid for (and received) the opportunity to win. When that chance did not pay off, it did not mean that he suffered a RICO property loss however. [The plaintiff's] disappointment at not winning his bets does not constitute an 'injury to property' sufficient to confer RICO standing. A voluntary participant in gaming activities is an "independent actor," and any "gambling losses are nothing more than self-inflicted wounds."

*Id.* at 1234–38 (internal citations omitted) (quoting *Green*, 2003 WL 22012205, at *2–3). Moreover, the court found no injury because the plaintiffs had not alleged that the gambling

machines being rigged *for* someone else had any effect on the plaintiffs' chances to win, that it was rigged *against* them, or even that they had played the very same machines. *Id.* at 1239–41. The court found that the plaintiffs "[were] left only with allegations that they got exactly what they bargained for when they paid to play electronic bingo machines at [the casino]—a chance to be a winner too. . . . It necessarily follow[ed] that there was a chance Plaintiffs would lose." *Id.* at 1240–41 (internal quotations and citations omitted); *see also Rodriguez v. Topps Co.*, 104 F. Supp. 2d 1224, 1226–27 (S.D. Cal. 2000), *aff'd sub nom. Chaset*, 300 F.3d 1083 (explaining that even though purchasing a pack of cards to gamble is a property *interest*, the question before the court was "*[h]ave Plaintiffs suffered an economic injury or loss; or have they in fact received the benefit of their bargain—the pack of cards and a chance to win?*" (emphasis in original)).

In this case, as in *Adell*, the Plaintiffs have received the benefit of their bargain and thus cannot allege a sufficient RICO injury. Plaintiffs placed their bets on the 2021 Derby subject to the rules and regulations of horse racing, including the KHRC Rules, of which their Amended Complaint makes clear they were aware.[14] *See, e.g.*, [R. 20, ¶¶ 78–79 (emphasizing the importance of the rules that apply to the Derby)]; *id.* at ¶ 81 (stating that "Plaintiffs and Class Members conduct in-depth research" before placing their bets, including, at least, the KHRC rules to the extent that Plaintiffs had "the understanding that horse doping is banned in the sport."). By placing their bets, Plaintiffs understood they were betting subject to the rules, including the finality rule. *See Mattera II*, 100 F.4th at 740 (citing *White II,* 909F.2d at 944–45) ("Bettors consent to these rules when they place a bet."); *see also supra* section III.B.1.a. In other words, Plaintiffs bet on the order that the

---

[14] Moreover, the applicability of the KHRC's Rules and administrative regulations was made clear on Churchill Downs' website. *See* Churchill Downs, *Wagering Rules*, (May 1, 2021), https://www.churchilldowns.com/racing-wagering/toteboard/wagering-rules/, archived at https://web.archive.org/web/20210501224614/ https://www.churchilldowns.com/racing-wagering/toteboard/wagering-rules/) (capture dated May 1, 2021) [https://perma.cc/CS7X-D5RJ].

horses would cross the finish line and that the stewards would declare final the day of the 2021 Derby—not a subsequent, new ordering based on a later disqualification or redistribution of the purse. *See Mattera II*, 100 F.4th at 740 ("Under [the KHRC rules], a pari-mutuel wager placed on the Kentucky Derby is a specific prediction of how the horses will be ordered *as determined by the official order of finish for pari-mutuel wagering purposes*." (emphasis in original)); *see also* 810 Ky. Admin. Regs. 4:060 § 7 (specifically stating that even "[i]f a horse is disqualified after a race has been declared official for pari-mutuel payoff and causes revision of the order of finish in the race . . . [t]he pari-mutuel payoff shall not be affected in any way."). Plaintiffs received the benefit of this bargain and accordingly suffered no plausible injury. *Cf. Adell*, 785 F. Supp. 2d at 1240–41; *see also White II*, 909 F.2d at 945.

Plaintiffs' alleged RICO injury is too speculative to withstand dismissal. Therefore, the Court will grant Defendants' Motion to Dismiss the federal RICO claims.

### c.    Plaintiffs Failed to Plead Lost Opportunity To Win

For the first time in their Response, Plaintiffs offer an alternate theory of injury. Specifically, they argue their injury is not the lost winnings but rather the loss of their "opportunity to win" with their selection of non-enhanced Mandaloun. [R. 91, p. 13]. Defendants counter on two grounds: first, that "[n]ot once in their Amended Complaint do the Plaintiffs reference some property right in the 'opportunity' to win" a bet; and second, "there is no 'property interest' in a gambling 'opportunity to win' and Plaintiffs cannot cite to a single Court decision in support of their contention." [R. 92, p. 7]. Plaintiffs, however, direct the Court to additional language in *Adell* as support. *See* [R. 91, p. 12]. In *Adell*, the court recognized that courts have "hypothesized that a RICO injury may [exist] had there been allegations that the gambling activity engaged in by the plaintiff was manipulated such that he or she did not in fact receive the chance to win that was purchased." 785 F. Supp. 2d. at 1239 (collecting cases); *see also Rodriguez*, 104 F. Supp. 2d at

[31]

1226 ("Plaintiffs appear to equate property *interest* (i.e. the consideration tendered during a gambling act) with property *injury* (i.e. a lost opportunity to win as would be the case, for example, with a 'rigged' or fraudulent gambling mechanism)." (emphasis in original)).

The Court will not consider allegations made for the first time in a plaintiff's Response when deciding a motion to dismiss. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("[A] court evaluating a motion for judgment on the pleadings (or a motion to dismiss) must focus only on the allegations in the pleadings."). The Sixth Circuit has made clear that plaintiffs may not "amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Id.* Even in the light most favorable to the Plaintiffs, their Amended Complaint makes no allegation of a lost property interest in the "opportunity to win."

Even if the Court were to consider this allegation, it would likely fail for the same reasons discussed above. Namely, Plaintiffs bet on the stewards' official order on race day, subject to the KHRC regulations, and received exactly the benefit of their bargain—a payout, or lack thereof, based on the stewards' official race-day call. *See Mattera II*, 100 F.4th at 740 ("Under this system, a pari-mutuel wager placed on the Kentucky Derby is a specific prediction of how the horses will be ordered *as determined by the official order of finish for pari-mutuel wagering purposes*." (emphasis in original)). Plaintiffs placed their bets understanding that the finality rule on wagering meant that only the official order of finish as announced by the stewards on race day counts for pari-mutuel wagering purposes.[15] *Cf. Doug Grant I*, 3 F. Supp. 2d at 534 ("The loss of an

---

[15] Defendants were also subject to the rules of racing. In addition to the disqualification of Medina Spirit and forfeiture of the purse money, *see* Stewards Ruling 22-0010, Baffert was suspended from all privileges at all facilities under the KHRC's jurisdiction, *see* Baffert, Stewards Ruling 22-0009. In addition, Churchill Downs suspended Baffert from its events specifically for three years. *See* Jacob Lev & Kevin Dotson, *Churchill Downs Lifts Hall of Fame Trainer Bob Baffert's Suspension After He Admits Wrongdoing*, CNN (July 19, 2024, 7:40 PM), https://www.cnn.com/2024/07/19/sport/churchill-downs-bob-baffert-suspension-lifted-spt/index.html [https://perma.cc/2N7Q-MZWG].

opportunity to gamble under favorable conditions . . . does not constitute injury to 'property' since there is no property right in the opportunity to gamble under any circumstances, let alone favorable conditions."). Plaintiffs rely heavily on *Berman v. Riverside Casino Corp.*, 323 F.2d 997, 979–80 (9th Cir. 1963), in which the court, interpreting Nevada law, found that plaintiffs alleging claims against a casino for using loaded dice could survive a motion to dismiss. [R. 91, p. 10 (discussing and analogizing to *Berman*)]. In *White II*, however, the Sixth Circuit made clear that *Berman* was inapplicable to bets controlled by the KHRC rules because "it does not appear that there was a delegated official in charge of making a final decision on each roll of the dice, nor was there an agency promulgated rule of finality" under Nevada law. *White II*, 909 F.2d at 946; *see also id.* (citing *Youst*, 729 P.2d 728, for "support to the proposition that even in the presence of wrongdoing, the official winner as declared by the stewards should not be disturbed").

Because Plaintiffs failed to plead injury to their "opportunity to win," that allegation is not properly before the Court, and the Court will not consider it. Nonetheless, the Court questions whether such an allegation would have saved Plaintiffs' case from a motion to dismiss. As Plaintiffs cannot show an adequate injury, the Court need not address the other elements of their RICO claims.

### 2.    State Law Claims

Plaintiffs initially invoked the Court's original jurisdiction by bringing this action under a federal statute, 18 U.S.C. § 1962(c)–(d). *See* 28 U.S.C. § 1331 (Federal-Question Jurisdiction); [R. 20, ¶ 69]. The Court may exercise supplemental jurisdiction over state-law claims when they "are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). At this point, however, all federal law claims

have been dismissed and all that remain are Plaintiffs' state RICO and fraud claims (Counts III–VI).

In such a posture, "[g]enerally, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 210 (6th Cir. 2004) (same). However, the Sixth Circuit has made clear that when "the district court's jurisdiction originally was premised on a federal claim and that claim subsequently was dismissed, remand to the state court [is] a matter of discretion." *Harper*, 392 F.3d at 211. When determining whether to exercise supplemental jurisdiction, the Court balances the values of "judicial economy, convenience, fairness, and comity." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)).

The facts of this case are similar to *Taylor* and *Harper*, in which the Sixth Circuit held judicial economy and fairness favored retaining supplemental jurisdiction. *See Taylor*, 973 F.2d at 1288; *Harper*, 392 F.3d at 211. Like *Taylor*, the case has been pending for several years. *See* 793 F.2d at 1288; *see also* [R. 1 (Original Complaint) filed July 23, 2021)]. As in *Harper*, the Court is "familiar with the facts of the case and already [has] invested significant time in the litigation." *See* 392 F.3d at 211. Also, Plaintiffs' state-law claims involve similar laws and are "premised on . . . identical allegations" to their federal claims. *See id.* at 209; *see also Coley v. Lucas Cnty.*, No. 3:09-cv-008, 2014 WL 273211, at *11 (N.D. Ohio Jan. 13, 2014) (addressing state RICO claims after dismissing federal RICO claims); [R. 91, p. 22 ("The State RICO laws follow very similar, if not the same, criteria as the Federal RICO allegations.")]. Moreover, the issues have been briefed by the parties, and neither party lodged an objection to the Court retaining jurisdiction. *See* [R. 90,

[34]

pp. 22–24]; [R. 91, pp. 22–25]; [R. 92, pp. 10–13]. As such, the Court will exercise supplemental jurisdiction over Plaintiffs' state law claims, turning first to their state RICO claims.

### a.    State RICO Claims

Plaintiffs assert violations of no fewer than twenty-three state RICO statutes. [R. 20, ¶ 189(a)–(w)]. Nowhere do Plaintiffs make specific allegations under any of the laws, but instead plead that "claims are brought under each Plaintiffs' applicable State RICO Laws . . . which prohibit conducting or participating, directly or indirectly, in the conduct of enterprises, through a pattern of 'racketeering activity' within the meaning of the State RICO Laws." *Id.*; *see also* [R. 90, p. 22 ("The Amended Complaint makes no specific allegations related to any particular state RICO law. Stated differently, there not a single allegation that details how a particular state's RICO law was violated.")].

In addition to noting the lack of detail in Plaintiffs' allegations, Defendants argue the state claims "piggyback off of their federal civil RICO allegations." [R. 90, p. 22]. Plaintiffs do not dispute that "[t]he State RICO laws follow very similar, if not the same, criteria as the Federal RICO allegations." [R. 91, p. 22]. Defendants contend that the state RICO claims will "fail for the same reasons set forth above." [R. 90, p. 22]. The Court agrees.

Having disposed of the federal RICO claims for failure to adequately plead injury, the Court easily dismisses the state RICO claims for the same reasons (and more). First, the following state RICO laws do not provide a cause of action to Plaintiffs and fail for that reason alone:

a.  **Connecticut** – Conn. Gen. Stat. § 53-393 *et seq.* (making no provisions for a civil cause of action); *Greene v. Grimes*, No. 3:23-CV-00453, 2024 WL 1341118, at *12 (D. Conn. Mar. 29, 2024) ("Plaintiff does not have standing to enforce [the Connecticut Corrupt Organizations and Racketeering Activity Act], a criminal statute. Indeed, the Second Circuit has held that this specific statute does not provide plaintiffs a private cause of action." (citing *Dauphinais v. Cunningham*, 395 F. App'x 745, 746 (2d Cir. 2010) (summary order)).

b. **Delaware** – Del. Code Ann. tit. 11, § 1505(c) ("Any person directly or indirectly injured by reason of any conduct constituting a violation of this chapter may sue therefor. . . . provided, however, no action may be had . . . except against a defendant who has been criminally convicted of a racketeering activity."); *Walls v. Del. State Police*, No. CIV.A. 88C-MR-37, 1988 WL 912224, at *2 (Del. Super. Ct. July 8, 1988) ("Since the defendants have not been convicted of racketeering, [the civil RICO claim] must be dismissed.").

c. **Kentucky** – Ky. Rev. Stat. § 506.120 (making no provision for a civil cause of action or damages).[16]

d. **Massachusetts** – Mass. Gen. Laws ch. 271A, § 1 *et seq.* (making no provision for a civil cause of action or damages).

e. **Michigan** – Mich. Comp. Laws §§ 750.159f *et seq.* (making no provision for a civil cause of action or damages).

f. **Nebraska** – Neb. Rev. Stat. §§ 28-1352 *et seq.* (making no provision for a civil cause of action or damages); *Williams v. Raynor Rensch & Pfieffer*, No. 8:11-CV-446, 2015 WL 2127095, at *22 (D. Neb. May 6, 2015) ("[N]othing in the text of the [Nebraska's RICO equivalent] suggests that the Nebraska Legislature intended to imply a private right of action, and [Plaintiff's] claim under the statute fails as a matter of law.").

g. **New York** – N.Y. Penal Code § 460:000 *et seq.* (making no provision for a civil cause of action or damages); *Wilson v. Neighborhood Restore Dev.*, No. 18-CV-1172, 2020 WL 9816020, at *5 (E.D.N.Y. Sept. 28, 2020) (dismissing Plaintiff's claims under New York's RICO law because "as private individuals, Plaintiffs cannot bring a claim under state criminal law").

h. **Oklahoma** – Okla. Stat. Tit. 22, § 1404(c) ("No person shall institute any proceedings, civil or criminal, pursuant to the provisions of [Oklahoma's RICO], except the Attorney General, any district attorney or any district attorney appointed under the provisions of [Oklahoma law].").

i. **Pennsylvania** – 18 Pa. Cons. Stat. § 911 (making no provision for a civil cause of action or damages); *D'Iorio v. Adonizio*, 554 F. Supp. 222, 232 (M.D. Pa. 1982)

---

[16] Although not plead, in the interest of completeness, the Court notes Kentucky has a general provision allowing for civil recovery for the violation of a criminal statute, but even that would fail because it requires plaintiffs to plead an injury proximately caused by the violation, which Plaintiffs cannot do. *See id.* at § 446.070 ("A person injured by the violation of any statute may recover from the offender such damages as he sustained *by reason of* the violation." (emphasis added)); *supra* Section III. B.1.

("Although the Pennsylvania Corrupt Organizations Act . . . bears a resemblance to federal RICO, the act does not on its face appear to create a private cause of action for money damages as RICO does.").

j. **Tennessee** – Tenn. Code Ann. § 39-12-201 *et seq.* (making no provision for a civil cause of action or damages); *Martin v. Franklin Cool Springs Corp.*, No. M20140-1804-COA-R3-CV, 2015 WL 7062124, at *1 n.1 (Tenn. Ct. App. Nov. 10, 2015) (declining to determine whether the Tennessee law creates a private right of action).

k. **Texas** – Tex. Penal Code § 71.01 *et seq.* (making no provision for a civil cause of action or damages); *Thompson v. Wells Fargo Bank, N.A.*, No. CV H-15-598, 2016 WL 164114, at *4 (S.D. Tex. Jan. 14, 2016) ("The [plaintiffs] assert a claim under the 'Texas Baby RICO law,' but such a law does not exist. To the extent the Thompsons mean to bring a cause of action under the Texas Organized Crime Statute . . . the claim fails as a matter of law because the [Texas] Penal Code does not create private causes of action." (cleaned up)).

Because these state laws do not permit civil recovery for racketeering violations (and, even if they did, the claims would fail at injury), Plaintiffs fail to state a claim under the laws of the preceding states.

The following states permit a civil RICO claim, but all require Plaintiffs to state an injury caused by Defendants' activity and accordingly fail for the same reasons as the federal RICO claims:

a. **Arizona** – Ariz. Rev. Stat. Ann. § 13-2314.04(A) ("A person who sustains a reasonably foreseeable injury to his person, business, or property by a pattern of racketeering activity . . . may file an action."); *see also Hannosh v. Segal*, 328 P.3d 1049 (Az. Ct. App. 2014) ("Although the Arizona racketeering statute is broader than its federal counterpart, we disagree that the phrase 'injury to [ ] person,' in the Arizona statute, includes gambling losses from an alleged illegal gambling operation.").

b. **Florida** – Fla. Stat. § 772.104(1) ("Any person . . . injured by reason of any violation of § 722.103 shall have a cause of action."); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263–64 (11th Cir. 2004) (calling Fla. Stat. § 772.103(2)–(4) "Florida's RICO analog," and stating "the analysis [courts] apply to the plaintiffs' federal RICO claims is equally applicable to their state RICO claims").

[37]

c. **Indiana** – Ind. Code § 34-24-2-6(b)[17] ("An aggrieved person may bring an action against a person who has violated [the Indiana criminal RICO statute] . . . for damages suffered as a result of corrupt business influence."); *id.* § 34-6-2-6 (defining an "[a]ggrieved person" as "[a] person who has an interest in property or in an enterprise that . . . has suffered damages or harm as the result of corrupt business influence"); *Raybestos Prod. Co. v. Younger*, 54 F.3d 1234, 1243 (7th Cir. 1995) (applying Indiana's RICO and holding "[t]o establish that a defendant's racketeering activities damaged or injured a civil plaintiff, the plaintiff must demonstrate that the defendant's actions 'proximately caused' the injury.").

d. **Iowa** – Iowa Code § 706A.3(7) ("Any person whose business or property is directly or indirectly injured by conduct constituting a violation of [Iowa's Ongoing Criminal Conduct Act], by any person, may bring a civil action").

e. **Louisiana** – La. Stat. § 15:1356(E) ("Any person who is injured by reason of any violation of the provisions of [Louisiana's Racketeering Act] shall have a cause of action against any person engaged in racketeering activity who violates a provision of [the Act]."); *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol N. Am. Inc.*, No. 2:11-CV-00856, 2013 WL 4516007, at *3 (W.D. La. Aug. 22, 2013) (explaining that "the court once again must look to federal case law construing the federal Racketeer Influenced and Corrupt Organization Act to address [the plaintiff]'s Louisiana Racketeering Act claim, based on the fact that the acts are parallel," and denying the claim because the plaintiff "failed to allege a concrete financial loss").

f. **Nevada** – Nev. Rev. Stat. § 207.470(1) ("Any person who is injured in his or her business or property by reason of any violation of [Nevada's racketeering statute] has a cause of action against a person causing such injury."); *Allum v. Valley Bank of Nev.*, 849 P.2d 297, 299 (Nev. 1993) ("[F]or a plaintiff to recover under Nevada RICO . . . the plaintiff's injury must flow from the defendant's violation of a predicate Nevada RICO act [and] the injury must be proximately caused by the defendant's violation of the predicate act.").

g. **New Jersey** – N.J. Rev. Stat. § 2C:41-4(c) ("Any person damaged in his business or property by reason of a violation of [New Jersey's RICO statute] may sue therefor."); *see Doug Grant I*, 3. F. Supp. 534–35 (applying both federal and New Jersey RICO and dismissing plaintiffs' claims because their alleged gambling injuries were "far too speculative to be compensable").

h. **North Carolina** – N.C. Gen. Stat. § 75D-8 ("Any innocent person who is injured or damaged in his business or property by reason of any violation of [North Carolina's RICO law] involving a pattern of racketeering activity shall have a cause of action."); *see Kaplan v. Prolife Action League of Greensboro*, 475 S.E.2d 247, 252–54 (N.C. Ct. App. 1996) (affirming summary judgment for defendants on the "ground that plaintiffs failed to demonstrate any injury or damage to property

---

[17] The Court notes that the Amended Complaint makes reference to Indiana's *criminal* RICO statute, Ind. Code §§ 35-45-6-1 *et seq.*

cognizable under NC RICO" and noting "plaintiffs' claim would fail under the analogous federal RICO provision and it is apparent the General Assembly did not intend to provide NC RICO with a broader remedial stroke than its federal counterpart.").

i. **North Dakota** – N.D. Cent. Code § 12.1-06.1-05(1) ("A person who sustains injury to person, business, or property by a pattern of racketeering activity or by a violation of [North Dakota's RICO] may file an action."); *see also Geraci v. Women's All., Inc.*, 436 F. Supp. 2d 1022, 1038–39 (D.N.D. 2006) (explaining that, like federal law, North Dakota RICO requires plaintiffs to state an injury).

j. **Ohio** – Ohio Rev. Code § 2923.34(A) ("Any person who is injured or threatened with injury by a violation of [the Ohio Corrupt Activities Act ("OCCA")] may institute a civil proceeding."); *W. & S. Life Ins. Co. v. JPMorgan Chase Bank, N.A.*, 54 F. Supp. 3d 888, 919 (S.D. Ohio 2014) ("An [OCCA] plaintiff must not only specifically plead cause in fact injury but must allege that the [defendants] proximately caused their injury" (cleaned up)).

k. **Rhode Island** – 7 R.I. Gen. Laws § 7-15-4(c) ("Any person injured in his, her, or its business or property by reason of a violation of [Rhode Island's RICO] may sue."); *Vitone v. Metro. Life Ins. Co.*, 943 F. Supp. 192, 199–200 (D.R.I. 1996) (dismissing Plaintiff's federal and Rhode Island RICO claims because, although they stated an injury as required by both statutes, Plaintiff could not show how the alleged RICO offenses could have caused the injury).

l. **Wisconsin** – Wis. Stat. § 946.87(4) ("Any person who is injured by reason of any violation of [Wisconsin's RICO] has a cause of action"); *City of Milwaukee v. Universal Mortg. Corp.*, 692 F. Supp. 992, 1001 (E.D. Wis. 1988) ("Under the Wisconsin RICO provisions, no relevant alternative requirements are expressed for the principle elements of a RICO offense, including the directness or causation of the injury. Therefore, the Court holds that the analysis above on the federal RICO claim applies equally to the Wisconsin RICO claim.").

For the reasons explained above, Plaintiffs are unable to plead a cognizable injury and therefore cannot state a claim under the state RICO analogs. *See supra* Section III.B.1. As such, the Court will grant Defendants' Motion to Dismiss Counts III and IV.

### b.     State Fraud Claims

Counts V and VI of the Amended Complaint assert claims for common-law fraud and equitable fraud. [R. 20, pp. 43–46]. The Amended Complaint does not address a specific jurisdiction from which it draws its fraud causes of action. *See generally id.* Both parties, however,

discuss Kentucky law in their briefing. *See* [R. 90, pp. 23–24]; [R. 91, pp. 24–25]. The Court will thus apply Kentucky law in evaluating the claims and find, for the following reasons, that Plaintiffs fail to state a claim.

Under Kentucky law, a plaintiff asserting common-law fraud must assert an injury as a result of the alleged fraud. *Grayiel v. AIO Holdings, LLC*, 648 F. Supp. 3d 812, 868 (W.D. Ky. 2022), *aff'd,* No. 23-5008, 2024 WL 2992676 (6th Cir. June 14, 2024) (citing *Flegles, Inc v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009)). Because Kentucky law does not recognize Plaintiffs' asserted injury as one warranting recovery, their common law fraud claims fail for the same reasons as their federal and state RICO claims. *See Mattera II*, 100 F.4th at 739; *see also supra* Section III.B.1. The Court will therefore grant Defendants' Motion to Dismiss Count V.

As to the Plaintiffs' final claim, Defendants assert that Kentucky does not recognize a cause of action for equitable fraud. *See* [R. 90, p. 23 n.3]. Plaintiffs' reply briefing does not refute (or even address) this contention. When a plaintiff fails to respond to a motion to dismiss on a certain claim, that claim is considered abandoned. *See Bradley v. Jefferson Cnty. Pub. Sch.*, 598 F. Supp. 3d 552, 567 (W.D. Ky. 2022) (citing *Doe v. Bredesen*, 507 F.3d 998, 1007–08 (6th Cir. 2007 ("[P]laintiff abandoned certain claims by failing to raise them in his brief opposing the motion to dismiss"). Moreover, the Court's research into Kentucky law similarly finds no acknowledgement of "equitable fraud." Even if such a claim existed, it, too, would fail at the injury prong. As such, the Court will grant Defendants' motion to dismiss Count VI.

## IV.    CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that the Defendants' Motion to Dismiss, [**R. 90**], is **GRANTED IN PART** and **DENIED IN PART**. The motion is **DENIED** to the extent Defendant seeks dismissal for lack of Article III standing, but the motion is **GRANTED** in all other respects.

A separate dismissal order shall follow.

This the 13th day of December 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Cc: Counsel of Record